IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ULTRATECH INTERNATIONAL, INC.,
a Florida corporation,

                          Plaintiff,

     v.

ABSORBENT SPECIALTY PRODUCTS, LLC,
a Rhode Island limited liability company,

                       Defendant.

Case No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff ULTRATECH INTERNATIONAL, INC. ("Plaintiff" or "UltraTech") hereby seeks a declaration that UltraTech does not directly or indirectly infringe United States Patent No. 9,297,134 ("the '134 patent"), and alleges as follows:

## NATURE OF THE ACTION

1.  This is an action for a declaratory judgment of non-infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201. UltraTech requests relief because Defendant Absorbent Specialty Products, LLC ("ASP") has accused UltraTech and its resellers through email correspondence of infringing the '134 patent and made clear that they intend to assert infringement of the '134 patent against UltraTech in this District.

2.  As explained in further detail below, UltraTech has not infringed, and is not infringing, the '134 patent, which is attached hereto as **Exhibit A**. UltraTech thus seeks a declaratory judgment to that effect, so that it may remove the cloud of uncertainty arising from ASP's allegations of infringement.

## THE PARTIES

3.     UltraTech is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 11542 Davis Creek Court, Jacksonville, Florida. UltraTech manufactures and sells products for various commercial and industrial applications, through more than 1,500 independent distributors in more than 60 countries.

4.     UltraTech manufactures and sells a product called the "Ultra-Flood Stopper" which is basically a sandless sandbag that can be used to build an effective water barrier to protect property, homes and stores against floods and other liquid emergencies.

5.     ASP is a limited liability company organized and existing under the laws of Rhode Island, having a principal place of business at 30 Hamlet St., Pawtucket, RI.

6.     ASP manufactures a product called "Quick Dam" which directly competes with UltraTech's Ultra-Flood Stopper product.

7.     Upon information and belief, Defendant directly or indirectly imports, develops, designs, manufactures, distributes, markets, offers to sell and/or sells products and services in the United States, including in the Middle District of Florida, and otherwise purposefully directs activities to the same.

## JURISDICTION AND VENUE

8.     This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*

9.     This Court has subject matter jurisdiction over this action pursuant to at least 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

10.    Upon information and belief, this Court has personal jurisdiction over ASP because it directly or indirectly imports, develops, designs, manufactures, distributes, markets, offers to sell and/or sells products and services in the Middle District of Florida (including products and services that relate to and, on information and belief, may practice the '134 patent, and otherwise purposefully directs activities to the Middle District of Florida.

11.    As such, ASP has established sufficient minimum contacts with this District such that it should reasonably and fairly anticipate being called into court in this District, and has purposefully directed activities at residents of the State and this District.

12.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b) at least, because a substantial part of the events relating to UltraTech's claims occurred in this District and because ASP is subject to personal jurisdiction here.

## ACTS GIVING RISE TO THE COMPLAINT

13.    ASP's President, Ms. Carol Dancer, is the inventor and owner of the '134 patent which, on information and belief, she licensed to ASP.

14.    On May 14, 2024, ASP sent an email accusing UltraTech of infringing the '134 patent and stating that ASP intends to assert a claim for infringement of the '134 patent against UltraTech.

15.    Also on May 14, 2024, ASP sent emails to several of UltraTech's independent distributors who sell UltraTech's Ultra-Flood Stopper product, accusing them of infringing the '134 patent, demanding that they immediately stop selling the Ultra-Flood Stopper product, and threatening to sue them for infringement.

## CLAIM FOR RELIEF

## COUNT I: NON-INFRINGEMENT OF THE '134 PATENT

16.  UltraTech incorporates by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

17.  On information and belief, ASP as licensee, owns a right, title, and interest in the '134 patent, a true and correct copy of which is attached hereto as Exhibit A.

18.  The '134 patent has two independent claims:  claims 1 and 13.

19.  Claim 1 of the '134 patent recites:

1. A barrier, for use in resisting the passage of surface water when laid upon a surface, having a length and a width wherein the length is substantially greater than the width, and containing a water absorbent substance which when contacted by water swells many-times in volume to form a gelatinous mass, thereby causing the barrier to change from a first as-fabricated configuration to a second swelled-configuration, the barrier comprising:

a sleeve, made of water-permeable fabric for containing said water-absorbent substance when swelled, having a front lengthwise-running end, a spaced apart rear lengthwise-running end, a sleeve top, and a sleeve bottom, said top and bottom each connecting said front end with said rear end; first fastening means running lengthwise along the sleeve and connecting the sleeve top to the sleeve bottom at a location intermediate said front end and said rear end, the location biased toward the rear end, the first fastening means thereby dividing the sleeve into a front lobe and a rear lobe, each lobe having an interior cavity and an associated volume, wherein each interior cavity runs along the length of the barrier;

*at least one sheet comprised of said water absorbent substance captured within the sleeve by said first fastening means, the sheet having a first fractional portion extending into the interior cavity of the front lobe and a second smaller fractional portion extending into the interior cavity of the rear lobe;*

wherein when in said swelled configuration, the front lobe has a volume which is substantially larger than the volume of the rear lobe.

20.  Claim 13 of '134 patent recites:

13. A barrier, for use in resisting the passage of surface water when laid upon

surface, having a length and a width wherein the length is substantially greater than the width, and containing a water absorbent substance which when contacted by water swells in volume by at least twenty times upon contact with water to form a gelatinous mass, thereby causing the barrier to change from a first as-fabricated configuration to a second swelled-configuration, the barrier comprising:

a sleeve, made of water-permeable fabric for containing said water-absorbent substance when swelled, having a front lengthwise-running end, a spaced apart rear lengthwise-running end, a sleeve top, and a sleeve bottom, said top and bottom each connecting said front end with said rear end;

first fastening means running lengthwise along the sleeve and connecting the sleeve top to the sleeve bottom at a location intermediate said front end and said rear end, the first fastening means thereby dividing the sleeve into a front lobe and a rear lobe, each lobe having an interior cavity and an associated volume;

*at least one sheet comprised of said water absorbent substance captured within the sleeve by said first fastening means, the sheet having a first fractional portion extending into the interior cavity of the front lobe and a second smaller fractional portion extending into the interior cavity of the rear lobe;*

wherein when in swelled up condition, the front lobe has a substantially larger volume than the volume of the rear lobe;

wherein, when the barrier is in swelled configuration the front lobe has a volume which is 60-90 percent of the total of the volumes of the front lobe and the rear lobe, the front lobe is 80-90 percent of the weight of the barrier, and the front lobe has a cross section transverse to the length of the sleeve which is D-shape.

21.    To simplify the claim language of both claims, the covered invention is: (A) an elongated barrier device that contains a water absorbent substance which swells when wet to form a gel, wherein the barrier device comprises: (B) a water-permeable sleeve; (C) fastening means (e.g., stitching) extending lengthwise on the sleeve to create a front lobe (elongated tube with greater volume) and a rear lobe (elongated tube with lesser volume); and (D) at least one sheet comprised of the water absorbent substance which is captured within the sleeve (i.e., secured in place) such that part of the sheet extends into the interior of the front lobe and the other part of the sheet extends into the interior of the rear lobe.

22.    Thus, the scope of the '134 patent is limited to the embodiment of the device shown in Figs. 4, 4A and 4B of the patent. In the figures (which are cross-sectional views of the device) the rear lobe is numbered 26, the front lobe is 28, the sheet comprising the water absorbent substance is 30, and the fastening means is 24. Claim 13 of '134 patent recites:



FIG. 4



FIG. 4A



FIG. 4B

23.    For a third party device to infringe the '134 patent, it <u>must</u> have element (D) of the claims – the sheet 30 comprising the water absorbent substance secured by the lengthwise fastening means 24 such that a major portion of the sheet 30 extends into the front lobe 28 and a minor portion of the sheet 30 extends into the rear lobe 26.

24.    The UltraTech products possess elements (A), (B) and (C) of the independent claims of the '134 patent, but completely lack element (D). There is no sheet member present in the interior of the product comprising the water absorbent substance which is

secured in place by the longitudinal fastening means.  In the UltraTech product, the water
absorbent substance is adhered directly onto the interior wall of the sleeve itself. This is a
unique and revolutionary feature of UltraTech's Ultra-Flood Stopper product. In fact, this
feature is the subject of a patent application which UltraTech has submitted to the United
States Patent and Trade Market Office.

25.    The reason the '134 patent is limited to a device that has a sheet member 30
secured within the barrier device to extend into each of the elongated lobes 26/28 is that
dual lobe, water absorbing, barrier devices and barrier devices containing water absorbing
substances had already been created.

26.    For example, a patent (now expired) issued to Doolaege in 2004 shows a
dual lobe, water absorbing, barrier device, with one lobe of greater volume than the other
and the lobes joined by longitudinal stitching:



Fig. 14B

27.    An international application (WO 2011/061539) filed by Bailey and published
in 2011 discloses a water-permeable, tubular barrier device containing a water absorbing
substance.

28.   These, along with several other examples of prior art, were cited by the Patent Office examiner during the prosecution of the '134 patent, which evidences that the only patentable subject matter contained in the specification of that patent is the embodiment of the device having the secured, water absorbing substance sheet extending into the interior of the front and rear lobes and secured by the fastening means.

29.   UltraTech does not directly or indirectly infringe the '608 patent, either literally or under the doctrine of equivalents. The embodiments discussed and shown in Figs. 1-3 and 7-10 were embodiments already known in the art or embodiments that were obvious in view of the prior art, and therefore are not covered by the patent.

30.   A substantial, immediate, and real controversy exists between UltraTech and ASP regarding whether UltraTech infringes the '134 patent by making, using, selling, and/or offering for sale its Ultra-Flood Stopper product. A judicial declaration is necessary to determine the parties' respective rights regarding the '134 patent.

31.   UltraTech seeks a judgment declaring that it does not infringe, either literally or under the doctrine of equivalents, one or more claims of the '134 patent by making, using, selling, and/or offering for sale the Ultra-Flood Stopper products, either directly or indirectly under 35 U.S.C. § 271.

### **PRAYER FOR RELIEF**

WHEREFORE, UltraTech respectfully requests:

1.   Judgment in favor of UltraTech and against ASP declaring that UltraTech does not directly or indirectly infringe the '134 patent, either literally or under the doctrine of equivalents.

2.   That the case be found exceptional under 35 U.S.C. § 285 and that UltraTech be awarded its attorneys' fees;

3.      Costs and expenses in this action;

4.      An award of prejudgment and post-judgment interest; and

5.      Such other and further relief as the Court may deem just and proper under the circumstances.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, UltraTech demands a jury trial on all issues and claims so triable.

**LIPPES & BRYAN, P.A.**

*/s/ Harold S. Lippes*
Harold S. Lippes, Esquire
Florida Bar No. 356591
700 Ponte Vedra Lakes Blvd.
Ponte Vedra Beach, FL 32082
(904) 686-1500 - Telephone
(904) 686-1409 – Facsimile
hlippes@bellsouth.net - email
Attorneys for Plaintiff